O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| INEZ ORTIZ, | ) | CASE NO. CV 05-01605 RZ |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed supporting memoranda. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

///

///

## I.

## BACKGROUND

Before turning to Plaintiff's arguments for reversal or remand, the Court summarizes the extensive history of his disability claim. Claiming to have been permanently disabled by an injury sustained in February 1980, Plaintiff applied for benefits in 1990, AR 195-201, suffered a denial at step four of the familiar five-step analytical process, AR 377-83, but won an Appeals Council remand in 1993. AR 402-05. In 1995, the same Administrative Law Judge denied Plaintiff's claim at step four again, AR 37-47, but later that year the Appeals Council remanded a second time for, among other things, "further attention to the claimant's residual function[al] capacity [(RFC)]," and directed that a different Administrative Law Judge consider the claim. AR 494-97. The new Administrative Law Judge issued a third denial in 1997, but she did so at step *two*, effectively backtracking from the prior two determinations that Plaintiff suffered from one or more "severe" impairments. Because this denial occurred at step two, the Administrative Law Judge did not make any detailed findings as to Plaintiff's RFC. This time the Appeals Council let the denial stand. AR 532-42, 529-31.

Plaintiff challenged that denial in this Court, which in 2001 concluded that it was improper for the Administrative Law Judge to have backtracked from, and reversed, the prior step-two findings that Plaintiff suffered "severe" ailments, given the prior Appeals Council remand instructions calling for further proceedings that *follow* step two. Because the 1997 denial made no findings as to RFC or what jobs Plaintiff might be able to perform, the Court concluded, remand was necessary to consider those issues. AR 631-39.

A third Administrative Law Judge denied Plaintiff's claim a fourth time in December 2004, this time at step four, as in the first two denials. AR 680-89. The Appeals Council again declined review. AR 7-8. Plaintiff timely brought another action in this Court to challenge the denial.

## II.

## STANDARD OF REVIEW

In providing for judicial review of the Commissioner's decision denying disability benefits, 42 U.S.C. § 405(g) states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Accordingly, the Commissioner's decision stands if substantial evidence supports the Administrative Law Judge's decision, and the Administrative Law Judge applied the correct legal standard. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). "Substantial evidence," a term of art traditionally used when reviewing administrative decisions, carries the traditional meaning here: "more than a mere scintilla . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id., quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must review the entire record in making its determination as to whether substantial evidence supports the Commissioner's decision. *Drouin, supra.*

## III.

## CREDIBILITY

Plaintiff asserts that the Administrative Law Judge (a) violated this Court's mandate, which, he contends, "*specifically* ordered the ALJ *to properly evaluate Plaintiff's subjective complaints and* to formulate a proper residual function[al] capacity"; (b) improperly found Plaintiff's subjective complaints less than fully credible; and (c) improperly failed to discuss Plaintiff's wife's 1993 hearing testimony. Pl.'s Br. at 3 (emphasis added), 12-14.

**A.  Mandate**

The first part of this claim is plainly meritless. The Court's mandate did not mention credibility findings at all, let alone "specifically," except in summarizing the

Appeal's Council's second of two remand orders. In any event, the real issue is whether the most recent credibility determinations are sound. They are.

### B.     Plaintiff's Credibility

The Administrative Law Judge found that some aspects of Plaintiff's subjective complaints, as well as other aspects of his account, were less than fully credible. Generally, once a claimant has supplied objective medical evidence of a malady that "could reasonably be expected to produce" some degree of pain or other subjectively-reported symptoms, the Administrative Law Judge may discount the claimant's testimony about the degree of pain – and how that pain affects the claimant's ability to work – only if the judge supplies specific, cogent reasons supported by substantial evidence in the record, *see Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (*en banc*); *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996), sufficient to permit this Court to conclude that the Administrative Judge's disbelief was not arbitrary. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994).

The Administrative Law Judge complied with the *Bunnell* standard by stating several reasons, supported by substantial evidence, for finding Plaintiff's account of his subjective symptoms not fully credible. First, he pointed out that evidence in the record suggested that the Spanish-speaking Plaintiff had lied in 1994 about somehow losing almost all of his prior ability to understand and speak English after he sustained an injury. "This is not credible," the Administrative Law Judge explained: "there is no evidence the claimant ever spoke English. Moreover, none of the consultative examiners ever found any organic brain disorder." AR 687. "In addition," the opinion noted, "the claimant was not candid about his alcohol abuse, although there is no evidence such abuse continues." *Id*.

Second, the Administrative Law Judge pointed to instances in which Plaintiff attempted to frustrate the disability evaluation process. For example, Plaintiff "fail[ed] to cooperate with Dr. [H. Harlan] Bleeker at the consultative examination in 1997. I can draw no conclusions other than evasiveness from the claimant's responses during the

examination because" an interpreter was on hand and Plaintiff had no organic brain disorder that could provide a more innocent explanation."  (Indeed, Dr. Bleeker diplomatically but clearly documented Plaintiff's "refusal to do many of the requested activities," AR 514, including his redirecting of questions about one part of his body with answers about other parts, AR 509, all of which made it "not possible [for Dr. Bleeker] to fill out a physical capacity evaluation that could be considered as being valid." AR 514.) "Finally, he was oppositional and hostile with Dr. [Stephen J.] Howard, stating a ball is square and grass is blue [citation to AR 499-508].  It is reasonable to assume that" if Plaintiff were sincere in such answers that "he would not have been able to demonstrate an intact memory, intact mathematical ability and ability to remember 5 digits forward and backward during the consultative psychiatric evaluation on May 6, 1992 [*id*.].  The claimant's blatant failure to cooperate with the consultative examinations seriously erodes his credibility and casts a shadow of doubt over his subjective allegations." AR 687.

That there may be other interpretations of a claimant's testimony and behavior that are reasonable does not mean that the Administrative Law Judge erred.  As long as his interpretation is reasonable and supported by substantial evidence, it is not the role of the Court to second-guess it.  *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001).  The underlying opinion amply satisfied the requirements for discounting Plaintiff's credibility.

### C. **Plaintiff's Wife's Credibility**

As summarized by Plaintiff, Plaintiff's wife testified at the 1993 hearing "that he has no patience with the children.  He does not leave the house because he becomes disoriented and gets lost.  He does not like to do his own things such as showering and bathing."  Pl.'s Br. at 13, *citing* AR 589.  Plaintiff argues that it was error for the Administrative Law Judge, in the most recent of the four opinions, not to have made a specific credibility finding about this testimony.  As a preliminary matter, the Administrative Law Judge is not required to mention every item in a claimant's record; a failure to address some items is not tantamount to a failure to consider them or a rejection

- 5 -

of them. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Such testimony can supply useful information about how a claimant's alleged impairments affect his ability to engage in gainful employment, *see* 20 C.F.R. § 404.1513(d)(4), however, and the Administrative Law thus may reject it only for specific reasons germane to the particular witness. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

If it was error for the Administrative Law Judge not to have mentioned this testimony, then the error was harmless. Plaintiff assets that Plaintiff's wife's testimony shows "a mental disorder characterized by loss of the ability to interact socially, to sustain persistence and pace, and to be outside of the home without the presence of his wife." The Court disagrees. Plaintiff's wife's statements were quite brief, rather vague and partially cumulative to Plaintiff's own account. (It is difficult to discern, moreover, how much her testimony relies on Plaintiff's subjective accounts and his non-verbal behavior, much of which the Administrative Law Judge properly found to be exaggerated or malingered.) To the extent that Plaintiff's wife offered an unadulterated account of a "severe" mental ailment, moreover, such stood strongly at odds with the professional medical assessments of Dr. Donald J. Feldman, who found only "slight" mental ailments in 1987, AR 323-24; and Dr. Zalman Magid, who in May 1992 found Plaintiff largely normal, including his ability to respond to co-workers, the public, and changes in a routine work setting. AR 371-73. The Court "can confidently conclude that no reasonable [Administrative Law Judge], when fully crediting" Plaintiff's wife's statements, "could have reached a different disability determination." *See Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006). Accordingly, any error inherent in the opinion's failure to discuss Plaintiff's wife's statements at the 1993 hearing was harmless.

## IV.
## NON-"SEVERE" FINDING RE MENTAL IMPAIRMENT

Plaintiff disputes the Administrative Law Judge's finding that any mental impairments Plaintiff suffered were not "severe." The regulations do not define a "severe"

- 6 -

impairment. Instead, they state what a *non*-severe impairment is: one that does not significantly limit physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. The basic work activities are "the abilities and aptitudes necessary to do most jobs," including various physical and mental activities. *Id.* The requirement of having a severe impairment performs a gatekeeping function, screening out frivolous complaints. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). In its internal procedures, the Social Security Administration assesses an impairment as "non-severe" if it has no more than a minimal effect on the individual's ability to do basic work functions. SSR 85-28. This minimalist treatment has received the Courts' imprimatur. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Thus, the requirement that a claimant have a severe impairment has been transmogrified into a requirement that the claimant have an impairment that is not very severe at all – it simply must have more than a minimal effect on his or her ability to do basic work functions. These include understanding, carrying out and remembering simple instructions; exercise of judgment; responding appropriately to supervisors, co-workers and usual work situations; and coping with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b).

Here, as noted in the preceding section of this Memorandum And Order, the Administrative Law Judge found that Plaintiff had no severe mental impairment based on the reports of two consultative examiners, Drs. Feldman and Magid, who in 1987 and 1992, respectively, found minimal psychiatric problems. *See* AR 686. Plaintiff cites the report of an even earlier consultative examiner, Dr. Myron L. Nathan. In 1983 Dr. Nathan opined, under the heading "Mental Status Examination," that Plaintiff "did not appear to be exaggerating his symptomatology nor did he appear to malingering." The doctor concluded that Plaintiff had below average intelligence, poor "adaptive functioning," and – as a bottom line of sorts – a "slight to moderate" psychiatric disability. *See* AR 452-454. But even if Dr. Nathan's report could support a "severe" finding, however, the Administrative Law Judge was not required to accord it greater weight than, or otherwise to prefer it over, the later, cited reports by Drs. Feldman and Magid. The latter sources

constitute substantial evidence supporting the Administrative Law Judge's non-severe finding, and Plaintiff fails to show that the finding stemmed from legal error.

## V.
## PHYSICAL RESIDUAL FUNCTIONAL CAPACITY

The Plaintiff disputes the Administrative Law Judge's finding that, within a year of his February 1980 accident, Plaintiff's Residual Functional Capacity permitted him to do at least medium exertional work. AR 685. Specifically, Plaintiff appears to argue that (a) substantial evidence does not support this assessment in any case, and, (b) even if it does, the Administrative Law Judge gave inadequate reasons for rejecting other views more favorable to Plaintiff's claim. On both counts, the Court disagrees.

### A. Substantial Evidence

In support of his physical RFC finding, the Administrative Law Judge cited the opinions of three consultative examiners. Dr. David Nehne noted during his 1981 examination that Plaintiff was "in no apparent distress. He walks into the examining room with a normal gait and demonstrates excellent mobility throughout the examination. He is able to sit, stand, mount and dismount the examining table with ease." AR 186. The doctor did note Plaintiff's "spontaneous neck movements" and moderate or mild back problems, but he found no deformities or impairments in Plaintiff's upper or lower extremities, which had full range of motion. AR 186-87. Ten years later, in 1991, Dr. Robert A. Moore examined Plaintiff and found no evidence of active radiculopathy or focal findings, while Plaintiff was unrestricted in his ability to stand, walk, sit, operate foot controls, and use his upper extremities to push, pull and perform fine coordinated finger movements. Factoring in Plaintiff's pain complaints, Dr. Moore believed Plaintiff could lift 10 to 20 pounds frequently and 30 to 40 pounds occasionally. *See* AR 356-60. Third, in 1993, Dr. Gary R. Feldman examined Plaintiff and found him unrestricted "in sitting, standing, walking, lifting, handling, seeing, hearing, speaking or traveling." AR 369. The

three reports cited by the Administrative Law Judge constituted substantial evidence in support of his finding that, although Plaintiff had medically determinable back and neck pain that was "severe" for purposes of disability analysis, Plaintiff remained capable of medium work.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### B.     Rejection Of Other Consultative Examiners' Opinions

Plaintiff asserts that the Administrative Law Judge gave insufficient "specific and legitimate reasons" for rejecting reports of other consultative examiners, pointing primarily to Dr. Kenneth Robinson's opinion based on examinations in 1983 and 1984. Dr. Robinson concluded that Plaintiff was unable to work due to soft tissue strains in his spine and upper left arm, among other observations. *See* AR 271-79. The Administrative Law Judge – in addition to noting that Dr. Robinson's conclusions were based in part on Plaintiff's subjective complaints, which complaints the Administrative Law Judge separately, and soundly, found less than fully credible – offered two reasons for rejecting Dr. Robinson's view.  First, it was "not consistent with the neurologic consultation on March 8, 1984 by Carlos Kahan, M.D., which was entirely normal" as to recent and long-term memory, nerves, strength, sensation and reflex testing. AR 684. "Dr. Kahan found [these] results unexpected in light of claimant's subjective complaints [citation to AR 300]." Second, "Dr. Robinson had not performed any diagnostic tests since the cervical and lumbar spine x-rays on July 8, 1983 which showed only muscle spasm [citation to AR 286]." These two reasons given enjoy substantial evidentiary support and are "specific and legitimate" bases for discounting Dr. Robinson's more pro-disability opinion.

Plaintiff also points to the opinion of Dr. Nathan, but the Administrative Law Judge explained that Dr. Nathan (1) based his opinions on Plaintiff's account of his symptoms, (2) performed no psychological testing of his own and (3) had no access to Plaintiff's medical records.  AR 686; *see* AR 445-56.

A third doctor cited by Plaintiff is Harlan Bleeker.  The parties disagree over whether the Administrative Law Judge "rejected" Dr. Bleeker's opinion or not, but the

Court agrees with Defendant "that while Dr. Bleeker offered a possible functional assessment" that tended to favor Plaintiff's claim, Dr. Bleeker, as noted above, "also reported that it was not possible to fill out a physical capacity evaluation that could be considered . . . *valid* because of the difficulty in obtaining a valid history, claimant's refusal to do many of the requested activities, and the many non-orthopedic problems affecting Plaintiff's responses." Def.'s Br. at 10 (emphasis in original); *see* AR 514, 685. The Administrative Law Judge already had explained why Dr. Bleeker's speculations about Plaintiff's true physical abilities merited "no weight," as even Dr. Bleeker himself suggested under the circumstances. The Administrative Law Judge's finding was sound. He was not required to explain it again or differently.

## VI.

## PLAINTIFF'S ABILITY TO PERFORM PRIOR WORK

Plaintiff argues that the Administrative Law Judge improperly concluded that the Plaintiff could perform his prior work. With one exception, acceptance of Plaintiff's argument requires that the Court (1) agree with his antecedent arguments assailing the finding that he was capable of medium work and, instead, (2) adopt his more restrictive views of his RFC. The Court already has found that the RFC assessment was sound.

The one additional argument posed by Plaintiff is that his inability to communicate well in English renders him unemployable in his prior job. But the Administrative Law Judge did not err in concluding otherwise, for two reasons. First, he already properly found that Plaintiff was never able to communicate well in English and that Plaintiff's contrary statements – that he once knew English but lost that knowledge after his accident – were falsehoods. It necessarily follows that Plaintiff was performing his prior work adequately without English language skills – and therefore that his ongoing inability to communicate in English presented no barrier to his returning to similar work. Second, even if the finding that Plaintiff was not disabled constituted a deviation from the Dictionary of Occupational Titles' listed requirements – as Plaintiff asserts, based on his

illiteracy in English – that deviation was properly based on the testimony of the vocational expert, Randi Langford-Hetrick. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (DOT requirements may be rebutted by expert testimony supported by substantial evidence). Ms. Langford-Hetrick explained that "almost 60 percent of Californians are illiterate in English and many of them are employed" in the very jobs that Plaintiff's counsel was suggesting required a command of English under the DOT. *See* AR 715-16; *see also* AR 729-30 (expert's follow-up testimony that 53 percent of Los Angeles area residents are functionally illiterate, but that "many of those people" nevertheless are able to work). Plaintiff does not dispute the expert's credentials or that her testimony lacks substantial evidentiary support; he simply asserts that her assertion was not "persuasive." *See* Pl.'s Reply Br. at 6-8. The Court disagrees. Implicit in the expert's testimony was her knowledge of language requirements (or the lack thereof) in southern California jobs of the sort discussed during the hearing. Moreover, Plaintiff's prior ability to perform his job without substantial English ability constitutes a sufficient basis for finding that his ongoing inability to communicate in English presents no barrier to such work. Accordingly, the non-disability determination at step four was sound.

## VII.
## CONCLUSION

For the foregoing reasons, the underlying decision is affirmed.

DATED:   September 26, 2006

                                                      */s/ Ralph Zarefsky*
                                                 RALPH ZAREFSKY
                       UNITED STATES MAGISTRATE JUDGE